JANE MOLESKE *vs.* JOHN A. MACDONALD, STATE HIGHWAY COMMISSIONER.

Third Judicial District, Bridgeport, April Term, 1929.
WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, JS.

Argued April 10th—decided June 13th, 1929.

*Frank W. Daley,* with whom, on the brief, were *Edward L. Reynolds* and *Raymond J. Devlin,* for the appellant (plaintiff).

*James W. Carpenter,* for the appellee (defendant).

HAINES, J.   The assignments of error all relate to a single question, well stated by counsel for the plaintiff-appellant, as follows:   "Whether the statutes impose on the Highway Commissioner the duty of maintain-

ing sidewalks on trunk line highways lying within highway limits, the neglect to perform which renders him liable in damages."

For the purposes of this appeal, the conceded facts are, that on October 1st, 1928, about seven o'clock in the evening, the plaintiff, while walking on a sidewalk on the southerly side of Main Street in East Haven, fell and was injured, by reason of the defective and dangerous condition of the sidewalk which was of tar, very old, worn, broken and cracked. This defective condition had existed for a long time prior to the plaintiff's fall. It is also conceded that Main Street is a trunk line highway over which the defendant in his capacity of State highway commissioner has jurisdiction, as a representative of the State. The appellant claims, in effect, that this jurisdiction is all inclusive, from fence line to fence line, while the appellee says it is inclusive only so far as the purpose and intent of our State highway legislation requires.

Appellant bases this action upon the Public Acts of 1925, Chapter 263, § 47, reading as follows: "Any person injured in person or property through the neglect or default of the State or any of its employees by means of any defective road or bridge which it is the duty of the highway commissioner to keep in repair, . . . may bring a civil action to recover damages sustained thereby against the highway commissioner."

For the purpose of legal definition the word "road," like the word "street," has often been held to include sidewalks and that meaning has been given it in decisions by this court under General Statutes, § 1414, where the term "defective road or bridge" also appears —a statute imposing liability upon municipalities from which they would otherwise be exempt on principles of governmental duty. *Keating* v. *New London,*

104 Conn. 528, 113 Atl. 536; *Frechette* v. *New Haven,* 104 Conn. 83, 96, 132 Atl. 467; *McGar* v. *Bristol,* 71 Conn. 652, 42 Atl. 1000; *Cusick* v. *Norwich,* 40 Conn. 375; *Manchester* v. *Hartford,* 30 Conn. 118. While this is true and the word is often used to designate the entire space between the fence lines, it is also often used in a more restricted sense, as applying only to that portion actually used for vehicular traffic.

"In constructing sidewalks it is more convenient to place them within the lines of the highway, and so when laid they form a part of the highway. But the power and duty of building and maintaining highways does not necessarily include the duty of building and maintaining sidewalks. The construction of a sidewalk, like the establishment of a building line, may well be independent of the construction of a street, and in most cities sidewalks, because they are more closely related to the adjoining land and serve more directly the use of that land, are made the subject of separate rules and are constructed in pursuance of separate authority." *State* v. *McMahon,* 76 Conn. 97, 105, 55 Atl. 591.

From this and many other illustrations which could be given it is apparent that the term "road" is a comprehensive one, and the sense in which it is employed is determinable from the intent and purpose of the statute in which it appears.

Turning then to the statute in question—Public Acts of 1925, Chapter 263, § 47—we inquire what purpose was intended by the legislature by its enactment.

Primarily, the governmental duty of building and maintaining public highways rests upon the State itself, but it may delegate this duty to agents of its own designation. Under this power, in 1672, the duty was placed upon the towns by statute, save where it belonged to certain particular persons, and so it has

remained. Acts, 1672, p. 7; Acts, 1750, p. 17; General Statutes, Rev. 1875, p. 231, § 1; General Statutes, Rev. 1888, § 2666; General Statutes, Rev. 1902, § 2013; General Statutes, Rev. 1918, § 1407. A similar policy is observable in relation to the construction and maintenance of sidewalks in towns and the duty is imposed upon each town as to sidewalks within its own limits. General Statutes, §§ 450, 451, 452; Hartford, Private Acts, Vol. 6, p. 314, Vol. 9, p. 626, Vol. 17, p. 790; New Haven, Private Acts, Vol. 5, p. 597, Vol. 17, p. 220, Vol. 18, p. 500; New London, Private Acts, Vol. 1, pp. 431, 439, Vol. 5, p. 105; Middletown, Private Acts, Vol. 1, p. 398. This duty was placed upon the town of East Haven, in which is the sidewalk in question, by Special Acts of 1915, Chapter 114, §§ 9, 15, 18.

The Act upon which the case of the appellant rests —Public Acts of 1925, Chapter 263, changes the long-established policy of our State, and provides for state aid to towns in the construction of certain public highways under prescribed conditions and for the construction and maintenance by the State of certain roads, as a part of a state trunk line system theretofore established by the State. The State highway commissioner in addition to his powers and duties in connection with such roads, is authorized to "lay out, alter, construct or reconstruct, maintain or repair, widen or grade any highway whenever, in his judgment, the interest of the State shall so require." (§ 25.) Save as to certain regulations relative to traffic and use, he is given "exclusive jurisdiction over all highways laid out, constructed, reconstructed or maintained by him, and shall have the same powers relating to the trunk line and state aid system of highways as are given to the selectmen of towns, the mayor and common council of any city and the warden

and burgesses of any borough." (§ 28.) He is charged with the maintenance of trunk line and state aid highways "except as otherwise provided by law." (§ 30.) He is given power over grades, location of trolley rails, fixing of boundaries, provision for gutters and drains, purchase of necessary lands and other powers having for their obvious purpose the service of vehicular traffic upon the main arteries of travel throughout the State. The relation of this purpose to the use and regulation of motor vehicles is obvious. The authority to "regulate shows, processions, assemblages, traffic or parades in streets and public places," etc., given to towns by the Public Acts of 1921, Chapter 400, § 60, is specially reserved to the towns by § 28 of the Act of 1925 which we are considering. A careful study of the entire chapter discloses nowhere any expressed intent to limit the power of towns over the public highways where its exercise will not interfere with the construction and maintenance of the more important roadways for modern travel through and about the State designated as state aid or trunk line highways, and so far as the whole or any part of such highways are needed in the construction and maintenance of a public highway, the commissioner is vested with a legal discretion to take and use them therefor. We discover no purpose and we conceive it contrary to the policy of the State reflected in its legislation, to interfere with or modify the obligations of towns for any roads or other avenues of travel, which are of only local concern. Sidewalks are of this character. They serve local convenience almost wholly and have no relation to, nor do they contribute to, the facilitating of that public travel which the State aims to serve by the establishment of state aid and trunk line roads between the towns and across the State.

To so interpret the word "road" in the Act in question would destroy the power and obligation of the towns over subjects of purely local interest, would do violence to the whole spirit and purpose of the Act and run counter to the consistent policy of the State to which we have made reference. It would substitute a literal but unnecessary interpretation of a legislative Act for a vital one effectuating the underlying legislative intent.

It is significant of the soundness of this conclusion that though, in § 17, bridges on state aid roads are to be maintained by the commissioner, the legislature was careful to point out, that while he was thus charged with the maintenance of this as part of a road, it did not include the sidewalks. It is difficult to see why, if sidewalks on such highways were intended to be maintained by the commissioner, the sections of such walks upon the bridges—negligible in extent—should be excepted. On the other hand, the maintenance of a bridge without more, would clearly involve both means of travel which it served—the road and the sidewalk. Nor can we suppose that it was the purpose of the legislature to devote the public money, derived in part from fees received from the Motor Vehicle Department, to such matters of purely local concern. Public Acts of 1927, Chap. 267, §§ 1 and 2. We furthermore find support for our conclusion in the fact that this Act cannot, save by the literal interpretation we are asked to give it, be shown to expressly refer to, and much less to repeal, existing and long standing legislation as to sidewalks. We would need strong support for reading into this statute a repeal of such legislation by implication.

If we examine the earlier legislation, now repealed, as to state aid roads we find specific reference to the roadway itself, showing that sidewalks were not in con-

templation, and we further find "public road" defined to mean "only the main highways leading from one town to another," obviously excluding sidewalks from the meaning intended. General Statutes (Rev. 1902) §§ 2087, 2088.

We are satisfied that the statute in question did not impose upon the commissioner any legal obligation for the condition of the sidewalk in question. We are not called upon to say whether this would be so if the allegation had been made that he had "laid out, constructed, reconstructed or maintained" the walk, since no such claim is made in the pleadings. The demurrer to the complaint was properly sustained by the trial court.

There is no error.

In this opinion the other judges concurred.